

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FTB:AFP

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 29, 2022

By E-mail and ECF

The Honorable Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Kara Sternquist
               Magistrate Judge Docket No. 22-01005

Dear Judge Reyes:

      The government respectfully submits this letter to request that the permanent order of detention that was previously entered as to the defendant Kara Sternquist in the above-captioned case remain in effect. The defendant is charged with illegally using, buying, and procuring fraudulent badges and credentials of multiple law enforcement agencies, in violation of 18 U.S.C. § 1017. In addition, the evidence developed to date shows that the defendant purchased and possessed a large number of firearms and firearms-related equipment, despite having two prior felony convictions involving conduct related to the creation and distribution of fraudulent identification documents. For the reasons set forth in greater detail below, the defendant should be detained as both a danger to the community and a risk of flight.

<u>Background</u>

I.      <u>The Charged Crime</u>

      As alleged in the Complaint, multiple packages from overseas containing counterfeit law enforcement badges for various federal agencies such as the U.S. Coast Guard and the U.S. Department of State were intercepted this year at JFK International Airport between January and August before they could be delivered to the defendant's address in Manhattan, New York. (Compl. ¶¶ 3-5). Each of those packagers were addressed to the defendant. (<u>Id.</u>). One additional package containing fraudulent law enforcement credentials for the United States Environmental Protection Agency that bore the name, "Kara Withersea," and a picture of the defendant was also intercepted prior to delivery to the

defendant's residence. (Id. at ¶ 6). In addition, purchase records show that the defendant purchased from a domestic supplier and had shipped to her residence a number of items that could be used to make or display counterfeit federal credentials, including items identified as "credential case IRS" and "ATF trifold badge case." (Id. at ¶ 10).

On September 15, 2022, federal agents executed a search warrant at the defendant's residence. (Id. at ¶ 15). There, they recovered approximately 52 fraudulent law enforcement badges or credentials from approximately eighteen different law enforcement agencies including the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the Bureau of Prisons ("BOP"), and an Assistant United States Attorney badge. Law enforcement agents also recovered the following: fifteen passport books from various nations bearing the images of individuals other than the defendant; approximately 709 credit or debit cards with approximately 316 pieces of photo identification of individuals other than the defendant, many of which corresponded to the credit or debit cards; and approximately six fraudulent Personal Identity Verification ("PIV") cards (as seen below) bearing the defendant's image from agencies that included the CIA, the Department of Navy, the Food and Drug Administration ("FDA"), the Department of Health and Human Services ("DHHS"), the Defense Intelligence Agency ("DIA"), and the Department of Defense ("DOD").



II.     Possession of Firearms and Firearms-Related Equipment

The evidence also shows that the defendant undertook to acquire, and did acquire, a large number of firerams and firearms-related parts and equipment. As discussed in the complaint, at least one international package containing rifle sights was intercepted at JFK Airport on July 7, 2022 as it was bound for the defendant's residence and addressed to her name. (Compl. ¶ 14). In addition, purchase records from numerous domestic suppliers of firearms-related equipment reflect the purchase by the defendant of various parts and components that can be used either to create new firearms (commonly referred to as "ghost guns") or to augment existing firearms including AR-15 rifles. (Id. at ¶¶ 11-13).

Aside from the cache of fraudulent law enforcement credentials in the defendant's residence, agents also recovered four fully assembled firearms (two pistols and two rifles) during the execution of the search warrant. Both of the rifles (one of which appears below) appeared to be fully automatic.



Law enforcement agents also recovered approximately fifteen currently inoperable firearms in various stages of construction and approximately twelve partially assembled pieces of equipment that appear to be firearms suppressors.[1] The agents also observed a work space that appeared to have been set up to assemble the firearms. They also recovered a "raid jacket" purporting to be from the United States Marshals Service. An overview of the seized contents from the defendant's residence appears below.

---

[1]     A suppressor, also known as a silencer, is a cylindrical object that attaches to the end of a firearm barrel and reduces the acoustic intensity of a gunshot when a firearm is discharged.

3



II.   Evidence of the Defendant's Motivation

At this stage in the investigation, it appears that the defendant may have harbored anti-law enforcement views.  In a Facebook account purportedly belonging to "Cara Sandiego" but featuring the defendant's face, the user "liked" an organization called "Armed Equality," which, on the Facebook page for that organization, featured multiple anti-law enforcement posts, including a character announcing that "the cops and government are now Nazis."  (Compl. ¶ 13 n.5).

III.   The Defendant's Criminal History

The defendant has a significant criminal history.  Notably, the defendant has two federal convictions for conduct similar to that alleged in the complaint.   As noted in the complaint, the defendant pleaded guilty on April 11, 2007 in United States District Court for the Southern District of Ohio to producing false identification documents, in violation of 18 U.S.C. §§ 1028(a)(1), (b)(1)(A).  (07-CR-033 (WHR), S.D. Ohio).[2]  She was sentenced to a 12-month term of imprisonment.  As set forth in the complaint, the defendant admitted as part of her plea agreement to creating at least 15 phony identification cards, including a counterfeit identification for the United States Department of Defense.  The defendant also admitted to using official names, seals, and other authentication features to make the cards appear legitimate.

---

[2]   As explained in the complaint, the conviction is in the name of Michael Sternquist and occurred when the defendant identified as a male.

Three years later, on June 30, 2010, the defendant pleaded guilty in United States District Court for the District of New Jersey to making and selling computerized templates for producing fake identification documents, in violation of 18 U.S.C. §§ 1028(a)(5), (b)(3)(c). (10-CR-432 (FLW), D.N.J.).[3] The complaint there alleged that between September 2009 and February 2010, the defendant computerized templates to manufacture false identification documents including multiple state driver's licenses and federal law enforcement credentials to sell them over the internet. The investigation in New Jersey revealed that the defendant communicated with others online through a Gmail address regarding the sale and potential sale of digital templates for various state driver's licenses. The defendant was sentenced to a term of 27 months' imprisonment followed by three years of supervised release. The defendant violated the terms of her supervised release twice in 2013 and was sentenced to a term of incarceration both times.

As noted in the pre-trial report, the defendant has additional convictions from various jurisdictions across the country including some in which she violated the terms of her probation or failed to appear in court.

## Discussion

I.  The Bail Reform Act

Bail decisions are controlled by the Bail Reform Act of 1984, codified at 18 U.S.C. §§ 3141-3156. The Act provides that, in general, a court "shall order" a defendant's pretrial release unless the court determines that the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). However, if the court finds by a preponderance of the evidence that the defendant presents a flight risk and that no conditions will reasonably assure the defendant's continued presence, the court should order detention. United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). Similarly, a defendant should be detained if the court finds that release on bail would pose a danger, 18 U.S.C. § 3142(e), though detention based on dangerousness must "be supported by clear and convincing evidence," 18 U.S.C. § 3142(f).

Whether detention is sought on the basis of flight or dangerousness, the Act lists four factors to be considered in the detention analysis:

> (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . .";
>
> (2) "the weight of the evidence against the person";

---

[3] This conviction was also in the name of Michael Sternquist. The charging document also listed the defendant's alias of "John Torchwood."

5

> (3) "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and

> (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g).

II.  Application

Consideration of the factors set forth in Section 3142(g) compels a finding that the defendant is both a risk of flight and a danger to the community. Significantly, Pretrial Services has also concluded the same in determining that that no condition, or combination of conditions would reasonably assure the defendant's appearance in court and the safety of the community. The evidence detailed above indicates that the defendant – consistent with her prior convictions – has a demonstrated ability to create or acquire various forms of identification that would permit her to seek to evade detection if she were to attempt to flee. Even with the seizure of the items recovered from her home during the search warrant, the defendant's past conduct shows that she has the expertise and capability to replenish her supply and disguise her true identity. It should also be noted that the defendant appears to have used an alias to purchase at least some of the firearms-related equipment outlined in the complaint, (Compl. ¶ 13) and, as noted above, and in the complaint, the defendant has sought to acquire at least some phony law enforcement credentials bearing her picture, but featuring a name other than hers (e.g., "Kara Withersea")  (Id. at ¶ 6).

As discussed, federal agents seized approximately 15 passports for various individuals (not the defendant) purported to have been issued by multiple different countries, including the United States. Aside from those passports, agents also recovered "blank" foreign passports for multiple countries that contained no biographical information. This evidence strongly suggests that the defendant was engaged in the creation of fake passports, which only exacerbates the flight risk.

The evidence also makes clear that the defendant, notwithstanding two prior felony convictions, was stockpiling firearms and parts related to firearms. Even as agents were executing the search warrant at the defendant's residence on September 15, 2022, two additional packages addressed to the defendant arrived at her building one of which appeared to originate from a gun manufacturer. Neither of those packages were opened. The illegal possession constitutes a significant danger to the community – this is especially true with respect to the automatic weapons that were recovered. The combination of the large number of guns and phony law enforcement credentials gives the defendant (or others) the possible ability to thwart security checks at any one of a number of vulnerable government buildings, courthouses, venues, and institutions, resulting in the introduction of firearms to those places. In addition, the defendant's social media history exhibits at least some evidence of antipathy to law enforcement. Under the circumstances, and without knowing for certain whether the

6

defendant potentially possesses other firearms or counterfeit identification documents stored at another location in the name of a different identity, the defendant's release poses a significant threat to the community.[4]

Notwithstanding the defendant's current medical situation, which is undoubtedly acute, as described in the defendant's application for release dated September 28, 2022 (ECF No. 25), the underlying conditions afflicting the defendant are ones that she has evidently lived with since approximately March 2022. As alleged in the complaint, during the time period from March 2022 to the time of her arrest, the defendant engaged in the acquisition and possession of fraudulent identification documents and firearms. She also resided in a two-story apartment and worked at a job that required her to commute from the Hell's Kitchen neighborhood in Manhattan to a work site in Harlem. The government's concern is that the defendant's chronic health issues have not historically inhibited her ability to engage in the charged conduct, and the government is not confident that they will do so in the future.

Conclusion

For the foregoing reasons, the government respectfully submits that the defendant Kara Sternquist is a danger to the community and a risk of flight, and that a permanent order of detention entered in the above-captioned case should remain undisturbed.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ F. Turner Buford
F. Turner Buford
Andy Palacio
Assistant U.S. Attorneys
(718) 254-6483

cc:   Clerk of Court (by ECF)
Counsel for the defendants (by hand)

---

[4] The complaint references purchases of firearms-related parts that were to be shipped to an address in Missouri and addressed to the name of a male individual. (Compl. ¶ 13 n.6). Those purchases referenced the same email address that was listed on purchases of similar equipment that were to be sent to the defendant's address.