```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

UNITED STATES OF AMERICA

                -against-                    MEMORANDUM & ORDER
                                             22-MJ-1005(RLM)
KARA STERNQUIST,

                Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Kara Sternquist was arrested on September 15, 2022 and charged with one count of possessing fraudulent badges and credentials for federal agencies in violation of 18 U.S.C. § 1017.  At her initial appearance, the presiding magistrate judge ordered her held without bail pending trial.  *See* Order dated Sept. 21, 2022.

On September 28, 2022, Sternquist presented a new package of proposed sureties and sought pretrial release.  The magistrate judge then on duty granted pretrial release, subject to various conditions.  *See* Order by Magistrate Judge Reyes Setting Conditions of Release dated Sept. 29, 2022 (the "September 29 Bond").

The government appealed that order the same day.  I held oral argument; the attorneys for both sides appeared in person.  *See* Minute Order, ECF No. 28.  The defendant appeared by telephone because she is currently hospitalized.  I reversed

the magistrate judge's order, holding that the proposed conditions of release were inadequate to reasonably assure Sternquist's appearance at trial and that the government had shown, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure . . . the safety of . . . the community." 18 U.S.C. § 3142(e)(1), (f). This order memorializes the reasons for my conclusion.

## I.  Flight Risk

The proposed bail package, the terms of which are set out in the margin, is insufficient to assure Sternquist's return to court.[1]  First, Sternquist is facing a substantial amount of prison time.  Although she has been charged only with violating Section 1017, the government has proffered that agents also recovered firearms during a search of her residence.  These include two rifles that the government represents were fully automatic — that is, capable of shooting multiple rounds with a single trigger-pull.  Gov't Letter Opposing Bail Package 3, ECF No. 26; Oral Argument held on Sept. 29, 2022.  Given Sternquist's prior felony convictions, there is a strong

---

[1] The proposed package consists of a $500,000 bond secured by two sureties; that Sternquist be subject to home incarceration with GPS monitoring in the custody of a third-party "custodian" who is an attorney admitted in this District; and the condition that Sternquist use only one cell phone monitored by Pretrial Services.  *See* September 29 Bond.

likelihood that she will face substantial additional sentencing exposure under 18 U.S.C. § 922 or other provisions of Title 18.

The Pretrial Services Report reveals Sternquist to have a substantial criminal history, including felony convictions for identity theft, carrying a concealed weapon, grand larceny, possession of stolen property, and possession of tools for forgery/counterfeiting.  Sternquist also has a number of misdemeanor convictions.  Pretrial Services also notes that Sternquist has a history of non-appearance and other non-compliance with court orders: the Richmond County Criminal Court issued a bench warrant for her arrest in 2007, and she violated the terms of her supervised release twice in the context of a prior federal case.  The latter violation led a judge in the District of New Jersey to revoke her supervised release and to impose an additional term of incarceration in 2013.  *See* Judgment in a Criminal Case, No. 3:10-CR-432-01 (D.N.J. Nov. 4, 2013), ECF No. 31.

As her criminal history demonstrates, Sternquist has the ability to procure false identification.  The government proffers that it recovered more than fifty fraudulent law enforcement badges and credentials, including at least one bearing Sternquist's image (but a different name).  For obvious reasons, this access to false identification devices increases the defendant's capacity for flight.

## II.  Danger to the Community

Second, the facts proffered by the government, and not contradicted by the defense, show Sternquist to be a danger to the community by clear and convincing evidence. *See United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (holding that "the government may proceed by proffer" in detention hearings). Sternquist argues – correctly – that her criminal history does not include violent conduct, apart from the weapons possession felony. However, Sternquist's possession of multiple firearms clearly renders her a danger to the community. *See, e.g., United States v. Williams*, No. 20-CR-293-2, 2020 WL 4719982, at *3 (E.D.N.Y. Aug. 13, 2020) ("[T]he danger of Defendant's release is demonstrated through the fact [that] Defendant's instant and past offense involved the use of a firearm."); *United States v. Harris*, No. 19-CR-300, 2020 WL 4014901, at *7 (S.D.N.Y. July 16, 2020) ("Defendant's arrest for being a felon in possession itself raises the specter of danger to the community."); *United States v. Gumora*, 454 F. Supp. 3d 280, 291 (S.D.N.Y. 2020) (defendant charged with being a felon-in-possession and possession of narcotics held without bond on dangerousness grounds, despite his contention that his asthma put him at "increased risk of getting severely ill or dying" from COVID-19 while incarcerated); *United States v. Smalls*, No. 20-CR-126, 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020)

4

(affirming a magistrate judge's order of detention that was based, in part, on "the general danger to the community posed by [the defendant's] apparently ready access to firearms"); *United States v. Nikolow*, 534 F. Supp. 2d 37, 39 (D.D.C. 2008) ("While the charges against the defendant do not involve violent acts, the defendant's illegal possession of 15 firearms in his store and his residence renders him a danger to the community."); *cf. United States v. Dillard*, 214 F.3d 88, 94 (2d Cir. 2000) ("The risk of violent use posed by a convicted felon's possession of firearms is significant."); *United States v. Lyons*, 675 F. App'x 28, 30 (2d Cir. 2017) ("The district judge indicated that felons in possession of firearms are a danger to society — the comment does not reflect an improper bias against firearms. To the contrary, it is an opinion shared by Congress, which criminalized such conduct.").

Here, Sternquist, who has a lengthy and serious criminal history, was found to be in possession of four fully assembled firearms, including two fully automatic rifles, and fifteen additional firearms in various stages of assembly. Gov't Letter 3. It should go without saying that an individual so inclined could employ these weapons to inflict egregious harm. *See United States v. Pellowitz*, 842 F. Supp. 134, 136 (E.D. Pa. 1993) ("A machine gun inherently poses a far greater danger than a handgun."); *United States v. Morgan*, No. IP05-

5

0255M-01, 2005 WL 1669400, at *4 (S.D. Ind. July 5, 2005) (defendant "present[ed] a serious risk to the community" because his "criminal history [was] lengthy and serious" and he "possessed a fully automatic MAK-90, an extremely dangerous weapon").  Notwithstanding the fact that the government has now seized these particular firearms, the suggestion remains that Sternquist has the ability to obtain weaponry in substantial quantities — including untraceable weaponry[2] — all of which weighs in favor of a dangerousness finding.  *See United States v. Sikes*, No. 21-CR-095, 2022 WL 610180, at *3 (S.D. Ga. Mar. 1, 2022) (denying bail in part because defendant showed "a willingness and ability to obtain firearms, even fully automatic firearms," even though his firearms had been seized).

      Likewise, Sternquist's possession of false law enforcement badges is also a factor weighing in favor of detention.  The government has proffered no facts, at this point, tending to indicate whether Sternquist possessed these items for personal use or for resale.  Either way, however, it is well established that items of this nature can be used to facilitate violent crime.  *See, e.g.*, *Tavarez v. United States*,

---

[2] The government contends that some of these guns may have been constructed (or were in the process of being constructed) to be untraceable: "[P]urchase records from numerous domestic suppliers of firearms-related equipment reflect the purchase by the defendant of various parts and components that can be used either to create new firearms (commonly referred to as 'ghost guns') or to augment existing firearms including AR-15 rifles." Gov't Letter 3.

6

No. 08-CR-242, 2021 WL 3741723, at *1 (E.D.N.Y. Aug. 24, 2021) ("The robbery crew posed as law enforcement officers, carried fake badges, and used falsified warrants to seize money and drugs from its victims."); *Pantoliano v. United States*, No. 13-CV-6417, 2020 WL 2110706, at *1 (E.D.N.Y. May 4, 2020) ("Mr. Pantoliano was part of a crew that carried out robberies of narcotics traffickers and illegal gambling establishments. During certain robberies, the crew posed as police officers, brandished firearms, and used counterfeit police badges. Several victims were physically restrained, threatened, or physically harmed."); *United States v. Ortiz*, No. 14-CR-669, 2016 WL 7373787, at *3 (E.D.N.Y. Dec. 19, 2016) ("Defendant and his male co-conspirator posed as law enforcement in order to gain entry into an individual's apartment. They displayed false badges to gain the victim's trust. In addition to handcuffing the victim, Defendant's co-conspirator possessed a gun and threatened to use it to instill fear and to keep the victim as a hostage in the victim's own apartment."); *Moore v. Pollard*, No. 19-CV-7771, 2022 WL 2079722, at *4-5 (C.D. Cal. Mar. 23, 2022) (habeas petitioner sexually assaulted two women while impersonating a police officer using a fake badge), *report and recommendation adopted,* No. 19-CV-7771, 2022 WL 1591692 (C.D. Cal. May 19, 2022), *appeal docketed*, No. 22-55538 (9th Cir. June 1, 2022).

### III. Medical Care

One important issue here is Sternquist's need for medical care. Sternquist represents – and the prosecution has not disputed – that she is in the hospital because of delays and errors in medical treatment by personnel of the Metropolitan Detention Center (MDC). These delays and mistakes led to serious infection, as described in the defense letter of September 28, 2022, ECF No. 25. At least one such delay, the defense asserts, was in violation of a specific court order. *See* Orders dated Sept. 22, 2022, ECF No. 12.

Sternquist argues that these factors are relevant to the bail analysis; she cites 18 U.S.C. § 3142(g), which directs the Court to consider the defendant's "physical . . . condition." Arguing for release on this basis places a lot of weight on a single phrase in the Bail Reform Act, especially in the case of a defendant whose criminal history and currently alleged conduct render her an otherwise remote candidate for release on the instant bail package. If, however, the MDC continues (as it is alleged to have done to date) to fail to meet Sternquist's medical needs, the government should not be surprised if the district judge ultimately assigned to this case elects to revisit the conclusion expressed herein.

## IV. Conclusion

For these reasons, the September 29, 2022 order granting pretrial release is reversed.

SO ORDERED.

                                              /s/ Eric Komitee
                                           ERIC KOMITEE
                                           United States District Judge

Dated:    October 8, 2022
             Brooklyn, New York