**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

November 4, 2022

Judge Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Kara Sternquist*, 22-cr-473

Dear Judge Irizarry:

Kara Sternquist has been shackled to a hospital bed since September 26, 2022. In a bail hearing, on September 29, 2022, the government stated that "our concern is not that [Ms. Sternquist] is a risk of flight or danger while she's hospitalized. Obviously those concerns are mitigated given her present situation." T. 9-22-99, MJ Reyes, at 8.[1] The government then argued that it believed she would be a future risk of flight and danger "when" she "does recover." *Id.* It has been an additional month; Ms. Sternquist remains in the hospital. She has not recovered. On the contrary, since our last bond application, she has had ███████████████████████████████ ███████████████████████████████. The wound remains open and she remains on IV antibiotics. On November 1, 2022, for the first time since she went into the hospital, and only with the assistance of hospital staff, Ms. Sternquist got out of bed and sat in a chair. Her medical situation remains serious. As the government does not believe she is a risk of flight or danger while at the hospital, they cannot meet their burden to require her to remain in-custody at the hospital. Additionally, once she is discharged from the hospital, she faces a long road to an uncertain recovery. The bond package proposed below mitigates any reasonable concern about a risk of flight or danger once she is discharged. I am, therefore, writing to respectfully

---

[1] Transcripts from the bond hearing in front of Judge Reyes and the government appeal to Judge Komitee are attached. Also attached is the transcript from the hearing in front of Judge Bloom related to MDC's responses to the court orders in Ms. Sternquist's case.

1

request that she be released on bond and request a bail hearing at a date convenient for the Court.

Strong bond package

We are proposing a strong bond package; one even stronger than that Magistrate Judge Reyes initially approved. Ms. Sternquist's bond would be signed by three close friends:

- Giacinta Pace: Ms. Sternquist's ex-wife and close friend. Ms. Pace works as a personal assistant and makes approximately $150,000 a year. She has known Ms. Sternquist for approximately 8 years. Her address is: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- Hannah Elyse Simpson: Ms. Sternquist's close friend. They have known each other about six years. She currently makes approximately $1,200 a month working as a patient care technician at Holy Name in Teaneck NJ and also doing side jobs as a freelance writer and Etsy shop owner. She previously worked as a COVID contact tracer for New York City making approximately $68,000 in 2021. She lives at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- Chris Towers: Ms. Sternquist's long-term friend. They have known each other since childhood. He works as Command Senior Enlisted Leader for the U.S. Navy, making approximately $50,000 a year. He has been with the Navy for 17 years. He lives at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Additionally, a newer friend of Ms. Sternquist's is also available and willing to sign her bond, if the Court requests additional suretors:

- Annie Billings: Ms. Sternquist's friend for approximately one year. She works as an independent contractor selling car windshields. She made approximately $45,000 in the past year. While she lives in Florida, at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, she is regularly in New York visiting family. When she visits, for numerous weeks at a time, she would see Ms. Sternquist approximately every day.

If released, Ms. Sternquist would live with Moira Meltzer-Cohen, who would serve as a third-party custodian. Moira Meltzer-Cohen is a lawyer and a member of the bar of the Eastern District of New York. She lives at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Giacinta Pace, Hannah Simpson, and Moira Meltzer-Cohen have already been questioned under oath by Judge Reyes.

Additionally, we propose that Ms. Sternquist be on home confinement, with GPS location monitoring, and the ability to leave the home only for court or medical appointments. She would be limited to the use of one internet-enabled device, which would be monitored by pretrial. Additionally, the Court could limit her access to visitors to a list approved in advance by pretrial and require Moira Meltzer-Cohen, as third-party custodian to monitor any mail received by Ms. Sternquist.[2]

Ms. Sternquist has no history of violence and is not a risk of danger.

Ms. Sternquist has no history of violence. Her criminal history is all non-violent. She has two prior felony convictions related to non-violent fraudulent identification offenses. All of her other criminal convictions listed in the pretrial report appear to be for misdemeanors or violations, many of which appear to be crimes of poverty from when Ms. Sternquist was young and homeless. *See* pretrial report (including misdemeanor convictions for failing to pay for the subway, petite larceny, theft). Nothing in her record supports that she is a risk of danger.

The charges themselves also do not show that she is a risk of danger. Ms. Sternquist has been indicted with two felony charges, one for possessing fraudulent badges and credentials for federal law enforcement agencies, in violation of 18 U.S.C. § 1017, and one for possessing a gun after having a previous felony conviction, in violation of 18 U.S.C. § 922(g). She is also charged with misdemeanor unauthorized possession of badges, in violation of 18 U.S.C. § 701.

People are regularly released in this district who are charged with possession a gun after a prior felony conviction, including people with prior histories of committing crimes of violence – unlike Ms. Sternquist – and those charged with not

---

[2] Logistically, when packages are delivered, the Meltzer-Cohen family receives a sticker on the front door on the outside of the apartment building indicating that they have to collect the package from the post office; the apartment building is not set up to receive packages. Letters are delivered through a common mail slot from the building front door. Moira Meltzer-Cohen collects the letters and packages. Mail is not delivered directly to the Meltzer-Cohen apartment.

just possession of a gun, but shooting of a gun – unlike Ms. Sternquist. *See e.g., United States v. Ronelle Esters,* 21-cr-398 (charged with possessing a gun, released on $150,000 bond signed by two suretors; prior convictions for gunpoint robbery and history of parole violations); *United States v. Charles Liggins*, 20-mj-206 (charged with possessing a gun, criminal history included burglary, felony gun possession, and misdemeanor assault; released on $100,000 bond, with no suretors); *United States v. James Laverpool*, 18-mj-810 (charged with possessing a gun with allegations from a shotspotter report that he had fired seven shots; released on bond of $25,000, signed by three suretors); *United States v. Isiah Britton*, 16-cr-565 (charged with possessing a loaded gun; prior convictions included possession of dangerous prison contraband and robbery; released on $75,000 bond with suretors). *See also United States v. Jesse Greco*, 19-mj-357 (charged with possessing a machine gun conversion device; released on $100,000 bond with suretors).³

---

³ The contrary cases from our district and the Southern District of New York cited by Judge Komitee, Dkt. 31, where courts have denied bond in gun possession cases each involve defendants who – unlike Ms. Sternquist – have histories of violence and/or allegations that a gun or other physical violence was used in the current offense:

Cases involving shootings

- In *United States v. Williams*, No. 20-CR-293-2 (WFK), 2020 WL 4719982, at *2 (E.D.N.Y. Aug. 13, 2020), the person was charged with "firing a shot at a rival gang member from close range after a disagreement at a bar [related to gang signs] and causing a non-fatal injury requiring surgery."

- In *United States v. Dillard*, 214 F.3d 88, 90 (2d Cir. 2000), the allegation was that person had fired three gun shots at a person.

- In *United States v. Sikes*, No. CR 421-095, 2022 WL 610180, at *1 (S.D. Ga. Mar. 1, 2022), the person was initially released, despite having "fired his weapon six times," being arrested with an AR-15 in his car, and having a history of prior illegal gun possession convictions. <u>After</u> his release, he crashed a plane and two more fully automatic guns were found; then he was detained.

Cases where gun was brandished

- In *United States v. Harris*, 2020 WL 4014901 (S.D.N.Y. July 16, 2020), the defendant was arrested in connection with a "domestic-violence incident" during which he "brandished a gun" and scratched his girlfriend's face. There were also allegations the defendant was in a gang, and he had a history of violent crime convictions, including manslaughter, robbery, and felony assault.

4

Notably absent from the government's prior statements in opposition to bond is any evidence that Ms. Sternquist had any intent to use any of the badges or guns that they allege she possessed. On the contrary, no ammunition was found with the gun parts, strongly suggesting that there was no plan for any violence. And, although the government previously asserted that there were automatic guns found, they have since disclosed that, during initial test fires, none of the test-fired guns worked automatically and two were unable to fire bullets at all during this initial testing. This new information is in contrast to what Judge Komitee had relied on. *See* Dkt. 31 at 2 (noting government's representation that there were fully automatic guns "capable of shooting multiple rounds with a single trigger-pull").[4]

The government's other arguments that Ms. Sternquist is a risk of danger are based on speculation. For example, in their September 29 letter opposing bond, the government argued in a section titled "Evidence of [Ms. Sternquist's] Motivation" that Ms. Sternquist "appears" to have "harbored anti-law enforcement views" because she had "liked an organization called 'Armed Equality'" on Facebook. Gov. Ltr. at 4. Liking an organization on Facebook is not "evidence" of any criminal motivation. In any event, the Facebook page for the group "Armed Equality" indicates that it is a group "armed & unarmed LGBT self defense training." Far from having nefarious "anti-law enforcement posts," it features cartoon memes:

---

o In *United States v. Gumora*, 454 F. Supp. 3d 280, 291 (S.D.N.Y. 2020), there were allegations that the defendant "brandished" a gun at his girlfriend during an argument, texted her a threat, and "ransacked" her apartment, leaving a bullet behind. He was also charged with serious drug offenses.

[4] Additionally, the numerous cases cited by Judge Komitee about robbery crews using fake law enforcement badges are inapposite to the allegations in Ms. Sternquist's case and her history. *See* Dkt. 31 at 6-7, citing numerous cases where serious violent crimes were committed with the use of fake badges. The government has not alleged anything of the sort in Ms. Sternquist's case and there is absolutely no evidence to support that Ms. Sternquist has ever been involved in any violent crime at all.




These memes state that the Facebook page supports "bodily autonomy, liberty, equality; freedom" as "worth fighting for."

Nothing about these silly internet memes that were not even created by Ms. Sternquist suggests that Ms. Sternquist is a risk of danger.

Ms. Sternquist is not a risk of flight

Ms. Sternquist is not a risk of flight: she has lived in New York City for the past approximately 12 years and she has strong community ties in the New York area, working at the Manhattan Jewish Community Center. She was arrested at work. And, prior to her injuries, she would also volunteer for local organizations where she could bring her joy in dressing as characters, such as people from Dr. Who, Ghostbusters, and The Magic School Bus, to others, including through the Make a Wish Foundation. She also would work as an usher for the National Yiddish Theater Folksbiene, in Lower Manhattan, including during performances of Fiddler on the Roof.

Ms. Sternquist's "Magic School Bus" (July 2021).




Ms. Sternquist at a Make-A-Wish event at The Pandorica, a Dr. Who themed restaurant (December 2016).

Ms. Sternquist in Ghostbusters outfit (Oct. 9, 2021, prior to her spinal injury)



The charges themselves also do not suggest she will be a risk of flight. On the contrary, she is not charged with any count with a mandatory prison sentence. While it is difficult to calculate her possible guideline range at this stage in the case, based on my best estimation at this point, and using inferences in favor of the accuracy of the government's current allegations, if her case results in a guilty plea disposition, she would likely be in Criminal History Category II, and could face guidelines in the range of 51-63 months, assuming the government could ultimately prove that any gun possessed was semiautomatic, and that the number of guns possessed (including items like the "inoperable" gun parts the government mentioned in its bail letter, Dkt. 26, at 3) was fairly large. This is far from a case where the seriousness of the charge itself presents a risk of flight. *Cf. United States v. English*, 629 F.3d 311, 317 (2d Cir. 2011) (noting 20-year mandatory minimum in risk of flight analysis).

7

Additionally, her two prior federal conditions under 18 U.S.C. § 1028, "fraud and related activity in connection with identification documents…", also do not support a conclusion that she is a risk of flight. According to the plea agreement for the 2007 conviction, the charge was based on making and using identification cards to attempt to negotiate counterfeit checks. ECF 07-cr-33 (WDOH), Dkt 23, at p. 7-8. Similarly, according to the plea agreement for the 2010 conviction, it involved the possession of templates to make identifications. ECF 10-cr-432, (DNJ) Dkt. 14. Neither involved any use by Ms. Sternquist of a false identification to evade law enforcement.

Nothing about her prior history shows a risk of flight. On the contrary, she had been regularly appearing for a local New York case, for which she had been released on her own recognizance, and which had been close to resolution with an alternative to incarceration disposition before her federal arrest. And the sole bench warrant noted in the pretrial report is from 2007, 15 years ago, and was vacated just one week after it was issued. As she remembers the circumstances of that warrant, it was issued during a time when she did not have a cell phone and did not learn that her court date had changed until she appeared in court. In any event, this brief one-week warrant 15 years ago says nothing about her risk of flight today, especially under the current bail package.

<u>Ms. Sternquist's medical condition underscores that she is not a flight risk.</u>

In March 2022,  Before her current hospitalization, she walked with serious difficulty and only with a wheelchair, cane, or other assistance. Her wheelchair was and remains at Ms. Pace's home. To get to work, she generally used an Uber or other car service. Her BOP records note that, prior to her hospitalization, she had been approved for a four-wheel walker, and egg crate mattress pad. BOP records, p. 11.



Ms. Sternquist shackled to her hospital bed (October 2022).

Given that Ms. Sternquist is partially paralyzed and currently confined to her bed, there is no realistic possibility of flight. This is especially so as Ms. Sternquist desperately needs to reconnect with her doctors in the community who had been helping her attempt to rehabilitate after her spinal surgery. The Federal Defenders has been in communication with her primary care doctor, ▇▇▇▇▇▇, whom she has been seeing for four to five years, including after her surgery. In a conversation on October 14, ▇▇▇▇▇▇ explained that Ms. Sternquist needs regular physical therapy with a professional. As he described it, only with physical therapy will she be able to recover fuller mobility in her legs. She was also to have follow up care with urology. Ms. Sternquist has every incentive to stay in the community and get the medical assistance she desperately needs.

### MDC has shown it cannot adequately address Ms. Sternquist's medical needs

Ms. Sternquist's current hospitalization is the result of MDC's lack of medical care. As Judge Komitee noted: the MDC's "delays and mistakes led to serious infection." Dkt. 31 at 8. Despite court orders, she was not seen by a doctor at MDC for 10 days ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ She was taken to the hospital, where she has remained for about 5 weeks.

MDC has repeatedly disregarded court orders in Ms. Sternquist's case to Ms. Sternquist's medical detriment, even while she has been at the hospital. As Judge Bloom explained on October 19, 2022, "it took Judge Komitee, it took Judge Levy, Judge Mann, Judge Reyes and myself in order for Ms. Sternquist to get the medication that she should have been receiving." T. 6 (transcript attached). Judge Bloom stated

that "BOP has had a significant role in thwarting the Court's orders." T. 11. She added that it shouldn't be a "death sentence to be put into MDC's care and that people are having to go to the hospital doesn't surprise anyone." *Id.* at 16.

Even before Ms. Sternquist's hospitalization she had serious medical needs, which MDC first ignored and then exacerbated, landing her in the hospital. These original medical needs relating to her spinal injury are ongoing. Once she is released from the hospital, she still will need her ▮▮▮▮ changed regularly; she still will need follow-up care from specialists; she still will need regular physical therapy with a professional. MDC is not able to address these needs. On top of those preexisting needs, it is still unknown what additional care she will need after her current hospitalization. There is no reason to think MDC will be equipped to handle those either.

\*   \*   \*

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "Doubts whether [bail] should be granted or denied should always be resolved in favor of the defendant." *Herzog v. United States*, 75 S. Ct. 349, 351 (1955); *accord United States v. Williams*, No. 17-CR-78-FPG, 2018 WL 3633296, at \*2 (W.D.N.Y. July 31, 2018). Ms. Sternquist should be released.

Sincerely,

/s/
Allegra Glashausser
Assistant Federal Defender