

U.S. Department of Justice

United States Attorney
Eastern District of New York

FTB:AFP

271 Cadman Plaza East
Brooklyn, New York 11201

November 9, 2022

By Hand and ECF

The Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Kara Sternquist
                Criminal Docket No. 22-473 (DLI)

Dear Judge Irizarry:

      The government respectfully submits this letter in response to the defendant Kara Sternquist's motion for bail. (ECF No. 51). For the reasons set forth below, the government respectfully submits that the Court should continue the order of detention entered by the Honorable Eric R. Komitee on September 29, 2022 because there is no combination of conditions that would reasonably assure the defendant's continued appearance and adequately protect the safety of the community.

I.    Background

      On October 17, 2022, a grand jury returned an indictment charging the defendant with the wrongful procurement of government seals, in violation of Title 18, United States Code, Section 1017; unauthorized possession of badges, identification cards and other insignia, in violation of Title 18, United States Code, Section 701; and being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g).

      The charges relate to the defendant's possession of numerous fraudulent law enforcement credentials from multiple federal agencies, firearms, and firearm-related components recovered from the defendant's apartment pursuant to a search warrant on September 15, 2022. The fraudulent law enforcement credentials included Personal Identity Verification ("PIV") cards bearing the defendant's image from law enforcement agencies including the Central Intelligence Agency ("CIA"), the Defense Intelligence Agency ("DIA"), and the Department of Defense ("DOD"). Law enforcement agents also recovered a cache of firearms in various stages of construction and numerous partially assembled pieces of equipment that appeared to be firearms suppressors.

II.     The Defendant's Detention and Bail Application

At the defendant's initial appearance on September 15, 2022, the Honorable Roanne L. Mann entered a temporary order of detention and scheduled a detention hearing on September 21, 2022.  (ECF No. 1).

On September 21, 2022, defense counsel did not present a bail package and the Honorable Sanket J. Bulsara entered an order of detention.  (ECF No. 10).  On September 29, 2022, the defendant presented a $500,000 unsecured bail package that featured two proposed suretors, a third-party custodian, and a condition of home confinement with GPS monitoring.  The Honorable Ramon E. Reyes granted release on that package and the government appealed to the Honorable Eric R. Komitee, the duty district judge.  (ECF No. 29).

Later that day, following a hearing, Judge Komitee reversed Judge Reyes' bail determination and entered a permanent order of detention finding that the "proposed conditions of release were inadequate to reasonably assure [the defendant's] appearance at trial and that the government had shown, by clear and convincing evidence, that 'no condition or combination of conditions will reasonably assure . . . the safety of the community.'"  (ECF No. 31 at 2).

On November 4, 2022, the defendant filed the instant motion for bail.  The defendant's principal argument is that the defendant does not have a history of violence and therefore does not pose a risk of danger.  The defendant also argues that her current medical condition undercuts her risk of flight.  Each of these arguments were already considered and rejected by Judge Komitee.  This Court should do the same.

III.    Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer, United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); see also United States v. Agnello, 101 F. Supp. 2d 108, 110 (E.D.N.Y. 2000) ("[E]vidence may be supplied through proffers and hearsay information, and the rules of evidence do not apply.").

IV. The Defendant's Risk of Flight is Unchanged

The defendant incorrectly argues that "[n]othing about her prior history shows a risk of flight." See Def. Mot. at 8. To the contrary, Judge Komitee relied heavily on the defendant's history of non-appearance and non-compliance with court orders to find that the defendant's proposed bail package was inadequate to assure her return to court. (ECF No. 31 at 2-3). Most notably, the defendant violated the terms of her supervised release twice in 2013 and was sentenced to a term of incarceration both times in the District of New Jersey. See United States v. Sternquist, 3:10-CR-432-01, ECF No. 25, 31.

The defendant's clear record of manufacturing and distributing false identifications and law enforcement credentials is especially relevant to the risk of flight analysis here. Aside from the phony PIV cards bearing the defendant's image, law enforcement agents also recovered numerous fake passport books and hundreds of photo identifications of individuals other than the defendant some of which were reported stolen. They also recovered a specialized printer used in the creation of identification documents. The defendant's history in specializing in this type of crime and continuing to engage in this conduct despite two federal convictions is especially alarming. As Judge Komitee noted, her "access to false identification devices increases the defendant's capacity for flight." (ECF No. 31 at 3). It should also be noted that, as argued in the government's original submission in support of detention, the defendant has used aliases in this case to acquire firearms and fraudulent law enforcement credentials, which further underscores the risk of flight.

V. The Defendant Continues to Pose a Danger to the Community and Should Be Detained Pending Trial

Since Judge Komitee entered a permanent order of detention, law enforcement agents have continued the process of completing a full inventory of the firearms and firearm-

3

related components recovered from the defendant's apartment and analyzing their operability. At this point, ATF agents have identified at least twelve items that meet the statutory definition of a silencer under 18 U.S.C. § 921(a)(24). In addition, they have concluded that at least six of the firearms recovered from the defendant's apartment satisfy the statutory definition of a firearm under 18 U.S.C. § 921(a)(3), and two of those firearms have been successfully test-fired. As Judge Komitee, emphasized in his opinion, the defendant's "possession of multiple firearms clearly renders her a danger to the community." (ECF No. 31 at 4).

Additional firearms recovered from the defendant's apartment remain to be tested by the ATF. Although the firearms analyzed thus far have not functioned as automatic weapons, agents recovered various components, which are specifically designed to convert a semi-automatic firearm into a fully automatic weapon. For instance, the Lower Parts Kit (pictured below) recovered from the defendant's apartment is designed to be used in the manufacturing of a fully automatic firearm.



Similarly, the three-round burst parts set (pictured below) is designed to be used in manufacturing a firearm with the capability of firing multiple rounds with a single trigger pull thereby rendering it classifiable as a machinegun under 28 U.S.C. § 5845(b).



       The government's assessment of the defendant's risk of danger is far from speculative. The only reasonable inference from the defendant's possession of these highly specific components (as well as others recovered from her home) is that she intended to enhance the lethality of the firearms under construction in her home. Defendant's possession of these dangerous firearms, together with the fraudulent law enforcement credentials bearing her own image, raises concerns regarding the defendant's ability potentially to access sensitive locations while in possession of illegal firearms. That the defendant was interrupted by the execution of the search warrant before she could repair, complete, or augment her firearms into more powerful weapons should be of no consequence.

       In a recent interview with a witness ("Witness-1"), law enforcement agents learned that the defendant would frequently order firearms components (some of which were illegal to possess in New York)[1] and have them shipped to Witness-1's residence out-of-state as recently as May 2022. Witness-1 would then send the components to the defendant's residence in Manhattan. According to Witness-1, the defendant claimed that she was building the firearms to defend herself. During the interview, Witness-1 turned over a box of firearms components to law enforcement agents (the contents of which are shown below) that he had not yet sent to the defendant. This inventory included firearm frames and several high-capacity magazines with a capacity of over 30 rounds of ammunition.

---

[1] In New York, a person is guilty of Criminal Possession of a Weapon in the Third Degree when they possess a large capacity ammunition feeding device. New York Penal Law § 265.02(8). A "large capacity ammunition feeding device" is defined as "a magazine, belt, drum, feed strip, or similar device, that (a) has the capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition . . . ." P.L. 265.00(23).








It should not matter that the government seized all of the firearms and firearm-related components from the defendant's residence during the execution of the search warrant because the evidence described above demonstrates that the defendant relied on an at least one associate to evade state and federal laws to obtain illegal firearms components and knowingly did so as a convicted felon.

The defendant's reliance on an outside network to conceal firearms on her behalf is further supported by a preliminary review of communications in the defendant's cell phone. In one particular text message, the defendant sent a text message to a contact on June 10, 2022 in which she suggested that she could also rely on friends and family to safeguard firearms for her. In that message, the defendant stated,

> I'm still like a month away from upgrading my phone, but i think you'd really like this AR i decided to build from my star wars blasters…i had a couple of polymer lowers, and an ATI hybrid poly upper, so I'm building a couple of full sized ARs complete with an aluminum bcg…gonna pair these with an adjustable gas block to compensate for the lack of mass, basically running them on mousefarts at 5.56 or .223, but also drop-in .22lr bcg…and

>   bonus, I can keep em with friends and family/some ppl who might not otherwise arm themselves but would totally hold onto some things for me and of course they'd take some training, but no I could never OWN A GUN types lol[.]

As Judge Komitee accurately pointed out that "[n]otwithstanding the fact that the government has now seized these particular firearms, the suggestion remains that [the defendant] has the ability to obtain weaponry in substantial quantities – including untraceable weaponry – all of which weighs in favor of a dangerousness finding." (ECF No. 31 at 6). Evidence of the defendant's reliance on a broader network of associates to assist her in obtaining and concealing firearms underscores her capacity to easily acquire guns even on home confinement.

VI.     Conclusion

For the foregoing reasons, the government respectfully submits that the defendant Kara Sternquist continues to be a danger to the community and a risk of flight, and that the permanent order of detention entered in the above-captioned case by Judge Komitee should remain undisturbed.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ F. Turner Buford
F. Turner Buford
Andy Palacio
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court (by ECF)
        Counsel for the defendant (by email)